UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

HEATHER C.,

Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 6:25-cv-00033-AR

OPINION AND ORDER

**ARMISTEAD, United States Magistrate Judge**

Heather C. challenges the Commissioner's final decision denying her disability benefits, arguing that the Administrative Law Judge erred in discounting her symptom testimony and improperly evaluated the medical opinion of consultative examiner David Archambault, Ph.D. (Pl.'s Br. at 1-19, ECF 15.) The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence. *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Lambert v. Saul*, 980

F.3d 1266, 1277 (9th Cir. 2020)). With that standard of review applied, the Commissioner's decision is AFFIRMED.

**A.** ***Subjective Symptom Testimony.*** Plaintiff argues that the ALJ failed to identify specific, clear and convincing reasons for discounting her symptom testimony. (Pl.'s Br. at 15-20.) *See Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022) (if a claimant provides objective medical evidence of an underlying impairment and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony). According to plaintiff, the ALJ did not identify specific activities of daily living (ADL) in which she engaged that exceeded her stated limitations or that could translate to full-time work. Concerning her mental health symptoms, in plaintiff's view, the ALJ failed to identify the testimony he found not credible and link it to specific evidence in the record. (Pl.'s Br. at 15-20.)

As to plaintiff's ADLs, the court agrees. The ALJ discounted plaintiff's testimony by noting that, despite her mental health allegations, she "has the concentration required to drive a car, pay bills, count change, handle a savings account, use a checkbook, use a computer, and shop for food and household items." (Tr. 21, citing Tr. 332-39.) Yet the ALJ failed to identify any activities that she performed that were inconsistent with her allegations. Because the ALJ did not explain "*which* daily activities conflicted with *which* part of [plaintiff's] testimony," the ALJ erred. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). That error, however, is harmless because the ALJ provided at least two other valid reasons for discounting plaintiff's testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (holding that

even if ALJ provides an invalid reason for discounting testimony, that error is harmless if other reasons are supported by substantial evidence and do not alter the ALJ's decision).

First, the ALJ properly discounted plaintiff's testimony because her mental health symptoms improved with treatment, and the ALJ linked her discounted testimony to the evidence demonstrating improvement. (Tr. 21, 23-24.) A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 404.1529(c)(3). And "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Here, the ALJ explained how, throughout the relevant dates, the medical record reflected plaintiff's consistent reports that her mental health symptoms improved. (Tr. 23-24.) The ALJ discussed that plaintiff's complaints of symptoms related to PTSD and depression—anger outbursts, racing thoughts, forgetfulness, and trouble concentrating—improved with medication and therapy. *Id.* The ALJ summarized that in late 2020, plaintiff reported significant improvement of her symptoms with medication. (Tr. 23, citing Tr. 457 (after starting Ritalin, plaintiff reported to one provider that she was "feeling much better, less irritable. She has a less foggy brain. Her moods are level.").) Also described by the ALJ was that, despite some continued anxiety, plaintiff reported continued improvement with treatment throughout 2021, noting "tangentiality, hyperverbal speech, and anxious mood, but also good eye contact, average fund of knowledge, normal attention and concentration, intact judgment and insight, organized thoughts, and intact memory." (Tr. 23, citing Tr. 411-12, 416, 420 ("She went off the Ritalin and

her daughter said she was not good without it [s]o she started it again . . . The meds have been helping her stay focused.”).)

Plaintiff also argues that the improperly ALJ cherry-picked the record, focusing on isolated instances of improvement and overlooking other records showing significant symptoms. (Pl.’s Br. at 19.) *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (“Reports of ‘improvement’ in the context of mental health issues must be interpreted with an understanding of the patient’s overall well-being and the nature of her symptoms.” (citing *Ryan v. Comm’r Soc. Sec. Admin.*, 528 F.3d 1194, 1200-01 (9th Cir. 2008)); *Attmore v. Colvin*, 827 F.3d 872, 877-79 (9th Cir. 2016) (holding that the ALJ erred by finding improvement where claimant continued to have functional impairments and improvement was not sustained). Not so.

The ALJ discussed plaintiff’s continued improvement with treatment and medication through 2021, 2022, and 2023. (Tr. 23-24, citing Tr. 612-13, 621, 644, 650, 703, 713, 715, 726, 771, 717, 941, 955.) For example, the ALJ remarked on plaintiff’s progress with therapy, her improved relationship with her significant other, and her repeated reports to providers that “her medications were ‘very helpful’ and were reducing her symptoms.” (Tr. 23, quoting Tr. 715, citing Tr. 643, 703, 713 (“since being back on the Lithium she can tolerate the pain better in that she is not having angry outbursts”), 726, 771 (“outside behavioral health medication regimen including lithium is helping her stay focused” and on track “to complete her tasks without added stress”).)

And the ALJ relied on the longitudinal record to explain plaintiff’s sustained improvement in her mental health symptoms with treatment and medication. The ALJ’s finding is supported by substantial evidence and provides a specific, clear and convincing reason for

discounting plaintiff's subjective symptom testimony about her mental health. *See Kitchen*, 82 F.4th at 739 (holding that "a gradual improvement in [plaintiff's] functioning with prescribed medication and psychotherapy sessions" was a specific, clear, and convincing reason for discounting their symptom testimony). That plaintiff interprets the record differently provides no basis for disturbing the ALJ's decision. *See also Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017) (citing *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.")).

Second, the ALJ discounted plaintiff's symptom testimony because her alleged physical symptoms were inconsistent with the medical evidence and other evidence of record, a finding not challenged by plaintiff. (Pl.'s Br. at 1, 18-20; Tr. 21-23.) Although plaintiff mentions at the outset of her opening brief that the ALJ "made errors" in evaluating her physical and mental health impairments, (Pl.'s Br. at 1), she presents no specific arguments identifying alleged errors made by the ALJ in evaluating her symptom testimony about her physical impairments or functioning (*Id.* at 18-20). Accordingly, those arguments are waived and any error the ALJ made is rendered harmless by plaintiff's failure to challenge that rationale for discounting her symptom testimony. (Tr. 21-23); *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006); *Molina*, 674 F.3d at 1115 (holding that even if ALJ provides an invalid reason for discounting testimony, that error is harmless if other reasons are supported by substantial evidence and do not alter the ALJ's decision). *See also Nadon v. Bisignano*¸ 145 F.4th 1133, 1138 (9th Cir. 2025) (where claimant failed to challenge additional valid reasons provided by ALJ for discounting providers' opinions, those arguments were forfeited on appeal) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (refusing to consider argument when claimant failed to

"argue th[e] issue with any specificity in his briefing")). Thus, the ALJ did not err in evaluating plaintiff's subjective symptom testimony.

**B.** ***David Archambault, Ph.D.*** David Archambault is a psychologist who conducted a consultative examination of plaintiff focusing on her mental impairments. (Tr. 596-610.) The ALJ determined that much of Archambault's opinion was "supported by observations made during the evaluation," and was "generally consistent with the medical evidence of record," yet the ALJ rejected two portions of his opinion: (1) that plaintiff would have difficulty completing an entire workweek, and (2) that she required additional supervision. Those portions, the ALJ found, were unsupported by Archambault's examination findings and were inconsistent with "the vast majority of objective examinations in the record" and plaintiff's multiple reports of improvement with treatment and medication. (Tr. 24-25); *see Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2) (ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors.")).

Plaintiff takes issue with the ALJ's findings, contending that the ALJ committed legal error by failing to separately address Archambault's opinion that she would struggle with the usual stressors encountered in the workplace due to her PTSD, bipolar disorder, depression, anxiety, and panic disorder which "leave her with minimal internal resources of the appropriate management of stress and/or resolution of conflict in a work or social setting." (Tr. 602-03; Pl.'s Br. at 4-6 (citing *Garrison*, 759 F.3d at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it[.]")). The ALJ did not, however, ignore Archambault's opinion about stressors in the workplace. Instead, the ALJ

found his opinion concerning work stressors persuasive, and translated it into functional limitations that were incorporated it into the RFC: limiting plaintiff to simple, routine, and repetitive tasks "in a work environment free of fast-paced production requirements, involving only simple work-related decisions, few workplace changes, no interactions with the public, and only occasional interaction [with] co-workers and supervisors." (Tr. 24.) Because the work stressors portion of Archambault's opinion was credited and incorporated into the RFC by excluding fast paced production and limiting her interactions with public, co-workers and supervisors, the ALJ reasonably accounted for Archambault's opinion that plaintiff would have difficulty managing stress and resolving work conflicts. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Plaintiff next contends that the ALJ's supportability and consistency findings lack specificity and are not supported by substantial evidence because they inappropriately cherry-pick instances of improvement in her mental health. (Pl.'s Br. at 6-15.) As for supportability, the ALJ explained how Archambault's opinions that plaintiff would have difficulty completing a workweek and required extra supervision were unsupported by his own examination findings because his testing revealed only a "handful of abnormalities that are not particularly related to such restrictions." (Tr. 24.) The ALJ's rationale was reasonable and supported by substantial evidence: although plaintiff exhibited mildly pressured speech and had to be interrupted occasionally, Archambault noted that she was mature, friendly, engaged, her "[s]peech was articulate and easily understood," and "[t]here was no evidence of loose association, tangential or circumstantial thinking and no evidence of confusion." (Tr. 600.) And during the cognitive

interview and test of plaintiff's intellectual functioning, she was alert, fully oriented, and only had difficulty completing serial sevens and serial threes calculations. (Tr. 600-01.) Plaintiff had no issues completing the tasks testing her memory and concentration, finding she could execute a four-step command, had an adequate fund of knowledge, intact abstract thinking, could make comparisons, and had intact judgment and insight. (*Id.*) The ALJ therefore provided "an explanation supported by substantial evidence" about how the supportability factor was considered. *Woods*, 32 F.4th at 792.

As for consistency, the ALJ found that Archambault's opinions that plaintiff would have difficulty completing a workweek and required extra supervision were inconsistent with plaintiff's medical record that showed "minimal abnormal findings, as well as numerous admissions of improvements with treatment and medication." (Tr. 25, citing Tr. 420, 612-13, 621, 643, 703, 713, 715, 726, 771, 941, 955.) The court is not persuaded by plaintiff's argument that the ALJ's citation of several records when discussing the consistency factor lacks specificity. (Pl.'s Br. at 7; Pl.'s Reply at 2, describing ALJ's rationale as an "information dump.") The ALJ previously discussed each of those medical records when discounting plaintiff's symptom testimony. (*Compare* Tr. 23-24 *with* Tr. 25.) Plaintiff identifies no authority requiring an ALJ to repeat that same detailed analysis when discussing the persuasiveness of a physician's opinion. *Waldrom v. Kijakazi*, 22-35893, 2023 WL 8433769, at *2 (9th Cir. Dec. 5, 2023) (explaining that "a fair consideration of the ALJ's decision show[ed] that the ALJ considered and discredited [a psychologist's] opinions regarding [the claimant's] moderate and marked limitations, and adequately explained the decision to do so") (citing *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (courts must look to "*all* the pages of the ALJ's decision" to assess whether ALJ's

rationale is adequately supported)); *Megan B. v. Comm'r Soc. Sec. Admin.*, 6:23-cv-00790-SB, 2024 WL 4404355, at *6 (D. Or. Oct. 4, 2024) ("ALJs are not required to articulate their 'full explanation' in 'one place' or paragraph in their decisions, and a court errs by 'overlooking [an] ALJ's full explanation.'") (quoting *Wendt v. Kijakazi*, No. 23-35069, 2023 WL 8542737, at *2 (9th Cir. Dec. 11, 2023)). As discussed above, the ALJ's findings that plaintiff's mental health symptoms improved with treatment and medication are backed by substantial evidence. Accordingly, examining *all* pages of the decision, the ALJ's evaluation of the consistency factor is likewise supported by substantial evidence and the ALJ did not cherry-pick the record.

Because the ALJ's reading of the record was rational and supported by substantial evidence, the court may not engage in second-guessing. *See Smartt*, 53 F.4th at 494, 499; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (providing that where medical evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld).

**CONCLUSION**

For the above reasons, the court AFFIRMS the Commissioner's final decision and this action is DISMISSED.

ORDERED: September 30, 2026.

______/s/ Jeff Armistead_____
JEFF ARMISTEAD
United States Magistrate Judge